UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARTIN PAULK, Individually and as Parent
and Guardian of "John Doe," a minor,

                    Plaintiff,                      5:06-CV-1343
-vs-                                                              (GTS/GJD)

CHARLES LESTER; SHAWN MEHLEK; and
FREDERIC BROUGH,

                    Defendants,
_____

APPEARANCES:                                      OF COUNSEL:

LAW OFFICE OF RICHARD BRICKWEDDE        RICHARD J. BRICKWEDDE, ESQ.
   Counsel for Plaintiff
One Park Place
300 South State Street, Suite 400
Syracuse, NY 13202-2004

HON. RORY A. McMAHON                       JAMES P. MCGINTY, ESQ.
City of Syracuse Corporation Counsel           NANCY JEAN LARSON, ESQ.
   Counsel for Defendants
233 East Washington Street
Syracuse, NY 13202

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM DECISION and ORDER

       Currently before the Court in this civil rights action filed by Martin Paulk, Sr., individually and as a parent and guardian of "John Doe," a minor ("Plaintiff"), is a motion for summary judgment filed by Charles Lester, Shawn Mehlek, and Frederic Brough ("Defendants"). (Dkt. No. 31.)  For the reasons set forth below, Defendants' motion is granted in part and denied in part.

I.      BACKGROUND

      A.      **Plaintiff's Claims**

Generally, liberally construed, Plaintiff's Amended Complaint alleges that, on February 11, 2006, in Syracuse, New York, John Doe's civil rights were violated when he was taken into physical custody by Defendants (Syracuse Police Officers). (*See generally* Dkt. No. 24 [Plf.'s Am. Compl.].) More specifically, Plaintiff alleges that Defendants unlawfully arrested John Doe, and that, during his arrest, he was assaulted. (*Id.*) Based on these allegations, Plaintiff's Amended Complaint asserts the following claims, pursuant to 42 U.S.C. § 1983 and/or New York State law: (1) assault and battery; (2) excessive force; (3) unlawful search and seizure; (4) false arrest; and (5) false imprisonment.[1] (*Id.*) Familiarity with the remaining factual allegations supporting these claims is assumed in this Decision and Order, which is intended primarily for review by the parties. (*Id.*)

      B.      **Undisputed Material Facts**

The following is a general summary of material facts that are undisputed by the parties. (*Compare* Dkt. No. 31, Attach. 14 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 35 [Plf.'s Rule 7.1 Response].)

On February 11, 2006, at approximately 11:30 p.m., Plaintiff Martin Paulk, Sr., and his then-fifteen-year-old child, John Doe, were moving from their apartment at 106 Jasper Place in the City of Syracuse. Plaintiff had left 106 Jasper Place to get a truck to transport their belongings to their new residence. John Doe remained at 106 Jasper Place to watch their

---

[1] The Court liberally construes Plaintiff's civil rights Amended Complaint to assert claims of false arrest and false imprisonment. *See* Fed. R. Civ. P. 8(e).

belongings. The residence at 106 Jasper Place was owned by an individual named Mia Bullock.

At some point in time on February 11, 2006, before Plaintiff returned with the truck, Mia Bullock directed John Doe to leave residence. When John Doe refused to leave, Mia Bullock called the police. Police officers, including Defendants Charles Lester, Shawn Mehlek and Frederic Brough, arrived at 106 Jasper Place.

At some point after their arrival, one or more of the police officers ordered John Doe to leave the residence. John Doe left the residence, followed by Defendants Lester and Brough. Once outside the residence, an altercation took place involving John Doe and Defendants Lester and Brough.[2] As a result of the altercation, John Doe was taken into custody and placed under arrest. John Doe was then transported to the Youth Division at the Public Safety Building.

Familiarity with the remaining disputed material facts, as set forth in the parties' Rule 7.1 Statement and Rule 7.1 Response is assumed in this Decision and Order, which (again) is intended primarily for review by the parties. (*Id*.)

### C. Defendants' Motion

Generally, in support of their motion for summary judgment, Defendants argue as follows: (1) Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that John Doe suffered a violation of any of his rights; (2) Defendants are entitled to qualified immunity on Plaintiff's search and seizure claim (which Defendants construe as a claim for false arrest); (3) Defendants Lester and Brough are entitled to qualified

---

[2] The altercation occurred 65-70 feet away from the house. At the time of the altercation, John Doe was 5'4" or 5'5" tall and weighed approximately 135 pounds, Defendant Lester was 5'9" tall and weighed approximately 180 pounds, and Defendant Brough was 5'10" tall and weighed 155 pounds.

immunity on Plaintiff's excessive force claim, as a matter of law; and (4) Plaintiff's claims against Defendant Mehlek should be dismissed because Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Mehlek was personally involved in the alleged constitutional violations. (*See generally* Dkt. No. 31, Attach. 15 [Defs.' Memo. of Law].)

In Plaintiff's response to Defendants' motion for summary judgment, he argues that he has adduced admissible record evidence from which a rational factfinder could conclude that Defendants (1) used excessive force during John Doe's arrest, (2) falsely arrested John Doe, and (3) are not entitled to qualified immunity. (*See generally* Dkt. No. 36 [Plf.'s Response Memo. of Law].)

In their reply, Defendants reiterate previously advanced arguments regarding qualified immunity and Defendant Mehlek's lack of personal involvement. (*See generally* Dkt. No. 38 [Defs.' Reply Memo. of Law].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . .

[record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the moving party has met this initial responsibility, the nonmoving party must come forward with "specific facts showing a genuine issue [of material fact] for trial." Fed. R. Civ. P. 56(e)(2).

As for the *materiality* requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 [citation omitted].

As for the *genuineness* requirement, a dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Id*. As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a *genuine* issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted; emphasis added]; *see also* Fed. R. Civ. P. 56(e)(2).³ Similarly, inadmissible hearsay is insufficient to create a *genuine* issue of fact, "absent a showing that admissible evidence will be available at trial." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) [citations omitted]. Moreover, "an affidavit . . . that, by omission or addition, contradicts the affiant's previous deposition testimony" is insufficient to create a *genuine* issue of fact. *Hayes v. New York City Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) [citations omitted].

---

³ As the Supreme Court has famously explained, "[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986) [citations omitted].

Finally, as this Court has previously observed, "It is well established that issues of credibility are *almost never* to be resolved by a court on a motion for summary judgment." *Cruz v. Church*, 05-CV-1067, 2008 WL 4891165, at *4 & n.6 (N.D.N.Y. Nov. 10, 2008) (Suddaby, J.) [emphasis in original; collecting cases]. However, "there is a *narrow exception* to this well-established rule." *Cruz*, 2008 WL 4891165, at *4 [citation omitted]. In *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005), the Second Circuit explained that this narrow exception is for testimony by a non-movant that possesses the following two characteristics: (1) it constitutes almost the exclusive basis for a disputed issue of fact in the case (or, expressed differently, it is largely unsubstantiated by any other direct evidence); and (2) it is so lacking in credibility (because the testimony is incomplete and/or replete with inconsistencies and improbabilities) that, even after drawing all inferences in the light most favorable to the non-movant, no reasonable jury could find for the non-movant. *Cruz*, 2008 WL 4891165, at *4 & n.7 [collecting cases]. "Again, it must be remembered that the circumstances giving rise to this exception are rare.'" *Id*. & n.7 [collecting cases].

  **B.**  **Legal Standards Governing Plaintiff's Claims**

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties. (*See* Dkt. No. 31, Attach. 15 [Defs.' Memo. of Law]; Dkt. No. 36 [Plf.'s Reply Memo. of Law]; Dkt. No. 38 [Defs.' Reply Memo. of Law].)

### III.   ANALYSIS

#### A.   Plaintiff's Claim of Excessive Force and Assault and Battery[4]

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's excessive force claim because (1) Defendants Lester and Brough are entitled to qualified immunity, and (2) Plaintiff has failed to introduce facts establishing Defendant Mehlek's personal involvement in the alleged constitutional violations.

Based on the current record, the Court rejects Defendants' first argument. A "[p]olice officer's application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 [1989]). Although "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment," *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted), the Second Circuit has "permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising." *Maxwell*, 380 F.3d at 108 (citing *Robison v. Via*, 821 F.2d 913, 924-25 [2d Cir. 1987]).

Here, at John Doe's deposition, he testified as follows: (1) on the night of February 11, 2006, he and his father were preparing to move out of the residence owned by Mia Bullock,

---

[4]   The Court notes that, except for § 1983's requirement that the tort be committed under color of state law, the essential elements of Plaintiff's excessive force claim is "substantially identical" to Plaintiff's assault and battery claim. *See Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991). As a result, the Court analyzes these claims together.

where they were living; (2) his father left the residence to pick up a moving truck; (3) he remained at the residence to "watch [his and his father's] stuff to make sure it was safe" because he was concerned about Mia and/or Jim "possibly taking, [or] breaking" things; (4) Mia Bullock and her friend Jim, who knew that he was still in the residence, left the residence at or around the same time that his father left; (5) Mia and Jim returned to the residence before his father; (6) when they returned, Mia asked him to leave; (7) he reminded Mia that she knew that he was supposed to be there; (8) Mia called the police because "she wanted [him] to leave, and [he] didn't want to leave because all [his and his father's] stuff was already packed up"; (7) when the police arrived, he was in the house, feeling "relatively calm" and not in any sort of "agitated" condition; (8) one of the officers (he thinks Defendant Mehlek) took Mia into the kitchen; (9) at least one of the officers entered the living room where he was standing with "the stuff," and he provided the officer with his name, age and date of birth; (10) he then began to tell the officer that he was in the house to watch over "the stuff" and that his father would be back in twenty minutes; (11) officers then started asking "questions that didn't coincide with the situation" and "started to make [him] uncomfortable" such as "Where is your father at, isn't he supposed to be here, . . . what are you doing with your stuff[?]"; (12) he then told the officers that he would not say anything further; (13) one officer then told him to "get the fuck out right now"; (14) he responded that he would "leave and . . . come back with a police escort to get [his] stuff because [he] needed it"; (15) one or more of the officers repeated the demand for him to leave; (16) he left the residence and was "about ten feet from the door" when he turned around to see Defendant Lester run out of the house; (17) he did not think Defendant Lester was coming after him, but thought instead that he was responding to an emergency call, so he continued walking;

(18) he then heard someone say "hey"[5] and he turned around and Defendant Lester "reache[d] out to choke [him], so [he] put [his] hands up . . . and spread [his] fingers to show [he was] not armed or anything;[6] (19) Defendant Lester then punched him in the face and he fell to the ground; (20) he was laying on his stomach; (21) Defendant Lester straddled him and grabbed his wrist; (22) Defendant Lester told him to put his hands behind his back, but also held his wrist to prevent him from being able to do so; (23) while he was on his stomach, face down, another officer (whom he "believe[s]" to be "either [Defendant] Brough or [Defendant] Mehlek") began to push him on the back of his head, "pushing [his] face into the ground, in the snow"; (24) the officers were "brushing [his] head, holding it"; (25) one officer lifted up his neck, but applied pressure to his throat; (26) Defendant Lester "was in front of [him], punching [him]"; (27) at some point, one or more officers kicked him in the face and in the body while he remained in a "choke hold"; (28) he told the officers, "I'm sorry"; (29) at some point he was handcuffed; (30) the officers stopped assaulting him, and he "screamed for help" and asked for an ambulance; and (31) he was placed in the back of the "paddy wagon" and subsequently transported to the youth division. (Dkt. No. 31, Attach. 8.)

Based on this testimony, the Court concludes that Plaintiff has adduced sufficient admissible evidence from which a rational factfinder could conclude that Defendants used excessive force when they arrested John Doe.[7]

---

[5]   John Doe also states that he heard someone say, "Hey, hey get over here, or something like that."

[6]   John Doe also states that Defendant Lester did choke him, and that after "[Defendant Lester] put both of his hands around [John Doe's] throat and started to shake," John Doe "put [his] hands up and spread [his] fingers," and was then punched in the eye.

[7]   The Court notes that, although John Doe's testimony is at times confusing, and arguably incredible, grounds do not exist to apply the narrow exception that would enable the Court to disregard the testimony as a whole. This is because it cannot be said, at this juncture,

Furthermore, based on the current record, the Court rejects Defendants' second argument that Defendants Lester and Brough are entitled to qualified immunity. "Under federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) [internal quotations and other citations omitted].

Here, there is no rational doubt that the right to be free from the use of excessive force was "clearly established" at the time Defendants Lester and Brough arrested John Doe. *See, e.g., Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) (noting that it is "well established that the use of excessive force in the course of an arrest is constitutionally prohibited"). Moreover, with regard to whether it was objectively reasonable for Defendants Lester and Brough to use the amount of force that they used, the Second Circuit has made clear that, "[w]here the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." *Mickle*, 297 F.3d at 122 (internal citations and quotation marks omitted).

Based on the current record, it is impossible to "determine whether [Officers Lester and Brough] reasonably believed that [their] force was not excessive when several material facts [are] still in dispute, [and therefore,] summary judgment on the basis of qualified immunity [is] precluded." *Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999); *see also Robison*, 821 F.2d at

---

that "no reasonable person could believe [the material substance of John Doe's] testimony." *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) (setting forth applicable standard for when to disregard testimony on motion for summary judgment).

924 ("[T]he parties have provided conflicting accounts as to [who] initiated the use of force, how much force was used by each, and whether [the arrestee] was reaching toward [a weapon.] Resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and [should not be] decided by the district court on summary judgment.").

However, based on the current record, the Court accepts Defendants' third argument that Plaintiff has failed to adduce admissible record evidence establishing Defendant Mehlek's personal involvement in the alleged constitutional violations. As an initial matter, the Court notes that, in his opposition memorandum of law, Plaintiff failed to respond to this argument. As a result, Defendants' burden with regard to the dismissal of this claim is lightened such that, in order to succeed on this request, Defendants need show only that their request has facial merit.[8] Based on their motion papers, the Court finds that Defendants have met this lightened burden. In any event, the Court finds that Defendants' argument would survive the heightened scrutiny appropriate on a contested motion for the reasons stated in Defendants' memorandum of law. (*See* Dkt. No. 31, Attach. 15.)

---

[8] *See Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases that stand for the proposition that, where plaintiffs do not respond to defendants' argument made in their summary judgment motion, plaintiffs are deemed to have consented to defendants' argument, and thus defendants must only satisfy their "modest threshold burden" of demonstrating entitlement to the relief requested in their motion for summary judgment); *cf. Di Giovanna v. Beth Isr. Med. Ctr.*, 08-CV-2750, 2009 WL 2870880, at *10 n.108 (S.D.N.Y. Sept. 8, 2009) (citing cases for proposition that plaintiff's failure to respond to argument made in summary judgment motion as to why certain claim should be dismissed constitutes abandonment of claim); *Niles v. Nelson*, 72 F. Supp.2d 13, 22 (N.D.N.Y. 1999) (McAvoy, C.J.) (holding that when a party does not respond to a portion of the opposing party's motion, they indicate that they consent to the granting of summary judgment with respect to that portion of the motion or have abandoned the claim); *Frink Am., Inc. v. Champion Road Machinery, Ltd.*, 48 F. Supp.2d 198, 209 (N.D.N.Y. 1999) (McAvoy, C.J.) ("Plaintiff does not address these claims in his opposition papers, leading the Court to conclude that it has abandoned them.") (collecting cases).

For these reasons, Plaintiff's excessive force claim against Defendants Lester and Brough survives Defendants' motion for summary judgment, and Plaintiff's excessive force claim against Defendant Mehlek is dismissed.

### B.  Plaintiff's Claims of False Arrest and False Imprisonment[9]

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's claims of false arrest and false imprisonment because (1) Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that John Doe was falsely arrested and/or falsely imprisoned, (2) Defendants Lester and Brough are entitled to qualified immunity as a matter of law, and (3) Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Mehlek was personally involved in the alleged constitutional violations.

Based on the current record, the Court rejects Defendants' first argument. "To establish a claim for false arrest or false imprisonment under 42 U.S.C. § 1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification.'" *McMillan v. City of New York*, 03-CV-0626, 2009 WL 261478, at *7 (E.D.N.Y. Feb. 4, 2009) (quoting, *inter alia*, *Escalera v. Lunn*, 361 F.3d 737, 743 [2d Cir. 2004]). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted); *see also Broughton v. State*, 37 N.Y.2d 451, 456-57 (N.Y. 1975) (noting that a plaintiff will prevail on a claim of false arrest under New

---

[9]  "A claim for false arrest is a type of claim for false imprisonment." *Coyle v. Coyle*, 354 F. Supp.2d 207, 211 (E.D.N.Y. 2005).

York law if he can show that the arrest was not privileged, i.e., not based on probable cause).[10] "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. In addition, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant[;] . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). "Stated differently, when faced with a claim for false arrest," this Court must "focus on the validity of the arrest and not on the validity of each charge." *Jaegly*, 439 F.3d at 154.

Here, John Doe was arrested for obstructing governmental administration and resisting arrest. Under New York Penal Law § 195.05, "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference . . . ." Under New York Penal Law § 205.30, "A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person."

It is undisputed that, sometime after the police officers arrived at Mia Bullock's residence on the night of February 11, 2006, John Doe was told to leave the residence. In addition, as stated in Part III.A. of this Decision and Order, John Doe testified at his deposition, after being

---

[10] "A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Jenkins*, 478 F.3d at 84 (citing *Weyant*, 101 F.3d at 852).

told to leave the residence, as follows: (1) he told the officers that he would "leave and . . . come back with a police escort to get [his] stuff because [he] needed it"; (2) one or more of the officers repeated the demand for him to leave; (3) he left the residence and was "about ten feet from the door" when he turned around to see Defendant Lester run out of the house; (4) he did not think Defendant Lester was coming after him, but thought instead that he was responding to an emergency call, so he continued walking; (5) he then heard someone say "hey" and he turned around and Defendant Lester "reache[d] out to choke [him], so [he] put [his] hands up . . . and spread [his] fingers to show [he was] not armed or anything; (6) Defendant Lester then punched him in the face and he fell to the ground;[11] (7) he was laying on his stomach; (8) Defendant Lester straddled him and grabbed his wrist; (9) Defendant Lester told him to put his hands behind his back, but also held his wrist to prevent him from being able to do so; (10) while he was on his stomach, face down, another officer (whom he "believe[s]" to be "either [Defendant] Brough or [Defendant] Mehlek") began to push on the back of his head, "pushing [his] face into the ground, in the snow"; (11) the officers were "brushing [his] head, holding it"; (12) one officer lifted up his neck, but applied pressure to his throat; (13) Defendant Lester "was in front of [him], punching [him]"; (14) at some point, one or more officers kicked him in the face and in the body while he remained in a "choke hold"; (15) he told the officers, "I'm sorry"; (16) at some point he was handcuffed; (17) the officers stopped assaulting him, and he "screamed for help" and asked for an ambulance; and (18) he was placed in the back of the "paddy wagon" and subsequently transported to the youth division. (Dkt. No. 31, Attach. 8.)

---

[11] Defendant Lester does not dispute that he punched John Doe in the face, but claims that he punched John Doe because John Doe "swung at [him] with his right fist [first,]" and failed to comply with demands to stop throwing punches and place his hands behind his back. (Dkt. No. 31, Attach. 9, at 16-17.)

The Court notes that failure to obey a police order *may* give rise to a police officer's reasonable belief for assuming that probable cause exists to arrest the non-compliant individual for obstructing governmental administration.[12] However, "probable cause to arrest does not exist when a party refuses to comply with an order that is not lawful." *Niles v. City of Oneida*, 06-CV-1492, 2009 WL 799971, at *7 (N.D.N.Y. Mar. 25, 2009) (Suddaby, J.).

Under the circumstances, when viewed in the light most favorable to Plaintiff, the Court concludes that a genuine issue of material fact exists regarding whether Defendants Lester and Brough had probable cause to arrest John Doe based on his failure to stop and speak with them almost immediately after he was told that he must leave Mia Bullock's residence. *See New York v. Howard*, 50 N.Y.2d 583, 591-92 (N.Y. 1980) (noting that "the failure to stop or co-operate by identifying oneself or answering questions [cannot] be the predicate for an arrest absent other circumstances constituting probable cause").

This is because, "[w]hen an officer unlawfully contacts a person, that person is justified in reasonabley resisting such contact." *Niles*, 2009 WL 799971, at *8 (citing *New York v. Turner*, 265 N.Y.S.2d 841, 851 [N.Y. App. Div., 1st Dept., 1965] [citation omitted]; *New York v.*

---

[12] *See Decker v. Campus*, 981 F. Supp. 851, 858 (S.D.N.Y. 1997) (holding "that[,] even if there did not exist probable cause to arrest plaintiff for obstructing governmental administration[,] any perceived interference with police orders at the scene of an accident-where life is at risk-is reasonable grounds for assuming probable cause to arrest"); *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995) (finding that, where it "was reasonable in these circumstances for the officers to believe that they had the authority to order [Plaintiff to do something], [w]hen she refused . . . it was reasonable for them to construe her actions as "interference" and to arrest her for violating a statute that appeared to reach her conduct."); *cf. Budgar v. New York*, 414 N.Y.S.2d 463, 466 (N.Y. Ct. Cl. 1979) (applying "the reasonable and prudent person test" and concluding that the trooper did not have probable cause to arrest the motorist for refusing to comply with the trooper's lawful order, despite the fact that after the order the motorist yelled at the trooper and threw his insurance card at him).

*Greene*, 634 N.Y.S.2d 144, 145 [N.Y. App. Div., 2d Dept., 1995] [collecting cases]). Thus, the essential element of resisting arrest–i.e., "authorized arrest of himself or another person"–cannot be found to exist if the arrestee's actions were in response to the officers' unlawful contact. *See, e.g., Sulkowska v. City of New York*, 129 F. Supp.2d 274, 290 (S.D.N.Y. 2001) (noting that, when an arrest is unauthorized, there is no probable cause to make an arrest for resisting the unauthorized arrest).

Here, when viewed in the light most favorable to Plaintiff, a genuine issue of material fact exists regarding whether Defendant Lester contacted John Doe before John Doe contacted (or attempted to contact) him. If Defendant Lester contacted John Doe before John Doe contacted (or attempted to contact) Defendant Lester, to the extent that John Doe resisted Defendant Lester's contact, such resistance would have been lawful. As a result, the Court denies Defendants' motion for summary judgment based on Defendants Lester and Brough having probable cause to arrest Plaintiff.[13]

Furthermore, based on the current record, the Court rejects Defendants' second argument that Defendants Lester and Brough are entitled to qualified immunity. As previously stated, "[u]nder federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins*, 478 F.3d at 87 (internal quotations and other citations omitted). Here, there is no rational doubt that the right to be free

---

[13] The Court notes that, under the circumstances, it is unable to conceive of any other law that John Doe may have violated, which would have rendered his arrest lawful as a matter of law.

from arrest without probable cause was clearly established at the time of John Doe's arrest. *See Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) [collecting cases]. Therefore, Plaintiff's Section 1983 false arrest claim turns on whether the probable cause determination of Defendants Lester and Brough was objectively reasonable.

"An officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest–that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Jenkins*, 478 F.3d at 87 [internal quotations and other citations omitted]. "[U]nder both New York and federal law, summary judgment dismissing a plaintiff's . . . claim is [not] appropriate if . . . on the undisputed facts the officer would be unreasonable in concluding probable cause existed, or if the officer's reasonableness depends on material issues of fact . . . ." *Jenkins*, 478 F.3d at 88; *see also Zellner v. Summerlin*, 494 F.3d 344, 377 (2d Cir. 2007) (if there is no probable cause to believe that the plaintiff broke the law, a subsequent arrest is unreasonable).

Here, after carefully reviewing the record, and construing it in the light most favorable to Plaintiff, the Court finds that there is at least some admissible record evidence from which a rational factfinder could conclude that it was not objectively reasonable for Defendants Lester and Brough to believe that they had probable cause to arrest John Doe during the time in question. In reaching this conclusion, the Court relies on John Doe's deposition testimony and his affidavit.

However, based on the current record, the Court accepts Defendants' third argument that Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Mehlek was personally involved in the alleged constitutional violations. As an initial matter, the Court notes that, in his opposition memorandum of law,

Plaintiff again failed to respond to this argument. As a result, Defendants' burden with regard to the dismissal of this claim is lightened such that, in order to succeed on this request, Defendants need show only that their request has facial merit.[14] Based on their motion papers, the Court finds that Defendants have met this lightened burden. In any event, the Court finds that Defendants' argument would survive the heightened scrutiny appropriate on a contested motion for the reasons stated in Defendants' memorandum of law.

For these reasons, the Court finds that Plaintiff's false arrest and false imprisonment claims against Defendants Lester and Brough survive Defendants' motion for summary judgment, and that Plaintiff's false arrest and false imprisonment claims against Defendant Mehlek are dismissed.

### C.     Plaintiff's Claim of Unlawful Search and Seizure

As stated above in Part I.C. of this Decision and Order, Defendants construe Plaintiff's claim of unreasonable search and seizure as a claim of false arrest. However, because a claim for unreasonable search and seizure may, in certain circumstances, constitute a separate cause of action, the Court will address this claim separately.

"The [Fourth] Amendment protects the people from unreasonable searches and seizures of their persons, houses, papers, and effects." *Soldal v. Cook County, Ill.*, 506 U.S. 56, 62 (1992) (noting that "the Amendment protects property as well as privacy") (internal quotation marks and citation omitted). Moreover, "reasonableness is still the ultimate standard under the Fourth Amendment." *Soldal*, 506 U.S. at 71 (internal quotation marks and citation omitted).

---

[14]     *See, supra,* note 8 of this Decision and Order.

As an initial matter, Plaintiff has alleged no facts plausibly suggesting that any Defendant seized John Doe's property, resulting in a violation of his Fourth Amendment rights. Moreover, Plaintiff's Amended Complaint fails to allege facts plausibly suggesting any search whatsoever, either prior to John Doe being handcuffed or upon arrival at the station house. For these reasons, the Court concludes that Plaintiff has failed to state a viable Fourth Amendment claim. As a result, Plaintiff's claim of unlawful search and seizure is dismissed.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 31) is **GRANTED** with regard to the following claims:

1. Plaintiff's claims against Defendant Mehlek; and

2. Plaintiff's unreasonable search and seizure claim; and it is further

**ORDERED** that Defendants' motion is **DENIED** with regard to the following claims:

1. Plaintiff's excessive force claim against Defendants Lester and Brough; and

2. Plaintiff's false arrest and false imprisonment claims against Defendants Lester and Brough; and it is further

**ORDERED** that, as a result of the foregoing, Plaintiff's claims against Defendant Mehlek are **DISMISSED**.

Dated: June 22, 2010
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge